# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

CLIVE DECOLINES,

                              Plaintiff,

                                                                                   9:20-CV-1502

      v.                                                                          (MAD/ATB)

D. HOLLENBECK, et al.,

                              Defendants.

CLIVE DECOLINES, Plaintiff, pro se
BRENDA T. BADDAM, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 17), which was referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge. Plaintiff responded in opposition to the motion (Dkt. No. 22), and then, with the court's permission, filed an amended response (Dkt. No. 25). Plaintiff did not respond directly to defendants' statement of material fact despite twice being warned about the consequences of failing to do so. (Dkt. Nos. 17 at 3, 19). Defendants filed a reply. (Dkt. No. 26). For the reasons set forth below, this court will recommend denying defendants' summary judgment motion, which argues that plaintiff's complaint should be dismissed based on his failure to exhaust administrative remedies.

I. **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

Local Rules of the Northern District of New York require that a motion for

summary judgment be accompanied by a statement of material facts which sets forth, in numbered paragraphs, "a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." Local Rule 56.1(a).[1]  The same rule requires the opposing party to file a response to the moving party's statement of material facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issues arise.  Local Rule 56.1(b).  The rule specifically provides that "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.*   However, "[w]here the party opposing summary judgment is proceeding *pro se,* the court must read his opposition papers "liberally and interpret them to raise the strongest arguments that they suggest." *Rodriguez v. C.O. Reppert*, No. 14-CV-671, 2016 WL 11483439, at *2 (W.D.N.Y. Sept. 28, 2016); *Cucchiara v. Dumont*, No. 9:18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *3 (N.D.N.Y. Apr. 26, 2019), report and recommendation adopted, 2019 WL 2514234 (N.D.N.Y. June 18, 2019) ("Although the defendant argues, and the Local Rules provide, that the Court shall deem admitted any facts the nonmoving party fails to "specifically controvert," *pro se* plaintiffs are afforded special solicitude in this District and within the Second Circuit.").

---

[1] Previously Local Rule 7.1(a)(3).

## II. Relevant Facts and Contentions

Plaintiff is an inmate under the jurisdiction of the New York State Department of Corrections and Community Supervision ("DOCCS"), who was housed at the Upstate Correctional Facility ("Upstate") in a Special Housing Unit ("SHU"), including from October 12, 2019 through July 21, 2020, when he was transferred to the Coxsackie Correctional Facility ("Coxsackie"). (Dkt. No. 17-5). Plaintiff signed his civil rights complaint under 42 U.S.C. § 1983 on November 30, 2020. (Dkt. No. 1). Following Judge D'Agostino's initial review of the complaint pursuant to 28 U.S.C. § 1915, only plaintiff's First Amendment retaliation and Eighth Amendment excessive force claims asserted against D. Hollenbeck, DA Hallock, JH Anctil, BJ Alvoie, and KD St. Mary were allowed to proceed. (*See* Dkt. No. 7).

The complaint alleges that, on February 17, 2020 at 8:25 a.m., Correction Officers D. Hollenbeck and DA Hallock escorted the plaintiff, in mechanical restraints, to 11-B-5 cell. (Dkt. No. 1-1- at 1). Upon arriving at that cell, plaintiff contends that an unnamed officer stated "you like writing grievances," ripped up a grievance plaintiff had previously filed in January 2020, and then entered the cell and assaulted plaintiff. (*Id.*). While plaintiff was on the floor, still restrained, Hollenbeck, Hallock and the other unnamed officer joined the assault. (*Id.*). Plaintiff further alleges that on February 17, 2020 at 11 a.m., defendants Hollenbeck, Hallock, Anctil, LaVoie and St. Mary assaulted him while he was being escorted from the recreational area. (*Id.*) One of the defendants allegedly said: "You should've kept your mouth shut n----r you wouldn't be going through this." (*Id.*).

In support of their summary judgment motion, defendants submitted declarations from Rachel Sequin, the Assistant Direction of the Inmate Grievance Program ("IGP") for DOCCS, and Sherri Debyah, the IGP Supervisor at Upstate. (Dkt. 17-4, 17-5). Nos. Both officials contend that, at the time of the alleged incident, and at all times relevant, Upstate had and continues to have, a fully functioning grievance program, available to incarcerated individuals to raise complaints. (*Id*.). Based on Supervisor Debyah's review of records at Upstate, she alleges that plaintiff did not file any grievances concerning his allegations against the defendants, which are the subject of this action. (Debyah Decl. ¶ 21). Assistant Director Sequin plaintiff stated, based on her review of records of the DOCCS Central Office Review Committee ("CORC") that plaintiff did not appeal the denial of any facility-level grievance determinations to CORC concerning the allegations against the defendants. (Seguin Decl. ¶ 15). Because 42 U.S.C. §1997e(a) requires an incarcerated individual to exhaust all available administrative remedies prior to filing a §1983 claim, defendants argue that plaintiff's complaint should be dismissed based on his failure to file a grievance and otherwise exhaust his administrative remedies.

In response to the summary judgment motion, plaintiff makes factual allegations consistent with those in his complaint and contests the defendant's claim that he did not exhaust his administrative remedies based on the actions of "the unnamed officer who ripped up my grievance . . . and the intimidation tactics done by Hollenbeck and his fellow officer[]s." (Dkt. No. 22 at 3-4). Plaintiff does not deny that he failed to file a grievance relating to the claims in the complaint.

5

**III.     Exhaustion of Administrative Remedies**

    **A.     Legal Standards**

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id*. § 701.8.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the

PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. Sept. 1, 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still relevant. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 656 F. App'x at 580. An administrative procedure is "unavailable" when

> (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Ross*, __ U.S. at __, 136 S. Ct. at 1859-60.

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Id*. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or

8

threatening them, preventing their use of the administrative procedure. *Id.* at 1860.

**B.     Application**

The relevant inquiry with regard to exhaustion in this case is whether administrative remedies were "available" to the plaintiff, given his claims of intimidation and assault by the defendants and others officers at Upstate. 136 S. Ct. at 1859-60. If prison administrators "thwart" inmates from taking advantage of the grievance process through "machination, misrepresentation, or intimidation," the administrative remedies are "unavailable," and the inmate is excused from the exhaustion requirement, regardless of which "official" prevented plaintiff from filing the grievance. *Id.* at 1860. Consistent with this approach, courts in this circuit have concluded, both before and after *Ross*, that where an inmate plausibly alleges that his failure to file a grievance was due to threats of physical harm by facility staff, there exists a material question of fact as to whether the defendant officers may rely upon the inmate's non-exhaustion as an affirmative defense.[2] *See, e.g., Hemphill*, 380 F.3d at 688 (remanding for determination of availability of administrative remedies where officer threatened to retaliate against the plaintiff if he filed a complaint); *Adams v. O'Hara*, No. 9:16-CV-527 (GTS/ATB), 2018 WL 5728040, at *6-7 (N.D.N.Y. July 24, 2018), report and recommendation adopted, 2018 WL 4590015 (N.D.N.Y. Sept. 25,

---

[2] As noted above, although *Ross* modified the factors relevant to the "availability" of administrative remedies, it essentially maintained the principle established in *Hemphill* that a failure to exhaust may be excused when prison administrators thwart inmates from taking advantage of a grievance process through, e.g., intimidation. Accordingly, case authority from this circuit that pre-dates *Ross* will still be instructive to the extent it discusses the impact of intimidation of prisoners on the availability of the grievance process.

2018); *Morrison v. Hartman*, No. 07-CV-6633L, 2010 WL 811319, *3 (W.D.N.Y. Mar. 3, 2010); *Lunney v. Brureton*, No. 04 CIV 2438, 2007 WL 1544629, at *9 (S.D.N.Y. May 29, 2007) (collecting cases).

Defendants dismiss plaintiff's claims of assault and intimidation as unsupported and overly general. (Def.s' Reply Br. at 3-4, Dkt. No. 26). However, plaintiff's complaint, and his response to the summary judgment motion both make consistent and reasonably specific allegations that he was threatened and assaulted because of his prior filing of a grievance, which was ripped up before him, and his failure to keep his "mouth shut." While plaintiff could not identify all of the individuals involved in the incidents on February 17, 2020, he identified several of the officers and provided a very specific account of the express or implied threats made against him. When considered in context, the alleged threats and violence "were such that a person of ordinary firmness would be deterred from using the facility's internal grievance process." *Hepworth v. Suffolk Cty.*, No. 2:02-CV-6473, 2006 WL 2844408, at *5-6 (E.D.N.Y. Sept. 29, 2006) (plaintiff's allegations that he "was physically assaulted in retaliation for previously testifying against corrections officers, and that he was threatened with further violence if he reported anything about the assault" created "a material issue of fact as to whether the normal grievance procedures were 'available'") (collecting cases, including *McCullough v. Burroughs*, No. 04-CV-3216, 2005 WL 3164248, at *3-4 (E.D.N.Y. Nov. 29, 2005) (plaintiff alleges that he was physically assaulted by the defendants in retaliation for his filing an earlier grievance; if true, it is certainly plausible that the assault would deter a person of ordinary firmness from using that

10

same grievance process to grieve the instant claims; therefore . . . the Court cannot conclude at this stage that the normal grievance procedures were 'available'" to plaintiff)); *Adams v. O'Hara*, 2018 WL 5728040, at *6 ("plaintiff has plausibly alleged that an Auburn official directly thwarted his timely attempt to file a grievance, and threatened physical harm if plaintiff sought administrative relief" even though he could not identify the sergeant who made the threat).

The court will address a few other issues reinforcing that there are material issues of fact regarding whether the grievance process was available to plaintiff, even though the defense did not raise these issues. As stated in Supervisor Debyah's declaration, plaintiff had 21 calendar days from the date of the February 20th incident (until March 9, 2020) to file a grievance and 45 days from the date of the incident (until April 2, 2020) to submit a written request showing good cause for seeking to file a late grievance. (¶¶ 6, 24). The defense acknowledges that plaintiff remained in the SHU at Upstate during the entire time period when he would still have been able to file a viable grievance. (Def.s' Br. at 6-7, (Dkt. No. 17-1). "Prison regulations provide that inmates in the SHU may file grievances by giving the complaint to a correction officer to forward to the grievance clerk." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 124 (2d Cir. 2016) (citing N.Y.C.R.R. tit. 7, § 701.7). Thus, there was no way plaintiff could have filed a grievance in confidence, without word getting back to the correction officers who threatened and assaulted him for filing a prior grievance. Nor could plaintiff have filed a viable grievance at Coxsackie, after he was transferred there in July 2020, by which time the applicable deadlines for pursuing administrative remedies

11

had long since passed. (See Def.s' Br. at 6-7 (a prisoner's effort to exhaust would be "futile" after the 21- and 45-day deadlines had expired)).

Defendants offered no evidence suggesting that plaintiff filed other grievances at Upstate between February 2020 and the time of his transfer to Coxsackie, which is consistent with the position that the grievance process was not available to him because of the threats and assault he alleges. Although plaintiff ultimately filed the instant lawsuit in December 2020, when he was apparently back at Upstate (*see* Dkt. No. 17-5 at 9), that does not change the availability analysis. Plaintiff may have been placed in a different cell block at Upstate, away from the defendants, when he was transferred there from Coxsackie on 11/12/2020, and he was able to mail the complaint to the Clerk in a sealed envelope as protected legal mail. (*See* Dkt. No. 1-3). "[T]hreats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority . . . ." *Hemphill*, 380 F.3d at 689.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 17), based on plaintiff's alleged failure to exhaust his administrative remedies, be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 15, 2021

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge