**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CLIVE DECOLINES,**

**Plaintiff,**

    **vs.**                                    **9:20-CV-1502**
                                                 **(MAD/ATB)**

**D. HOLLENBECK, et al.,**

**Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**CLIVE DECOLINES**
17-A-2433
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953
Plaintiff, _pro se_

**OFFICE OF THE NEW YORK**          **BRENDA T. BADDAM, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224-0341
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### DECISION AND ORDER

       Plaintiff Clive Decolines ("Plaintiff") commenced this action _pro se_ on December 7, 2020,

against Defendants D. Hollenbeck, DA Hallock, JH Anctil, BJ Alvoie, and KD St. Mary

("Defendants") and, pursuant to a Decision and Order from this Court issued on January 7, 2021,

two of Plaintiff's claims survived.  _See_ Dkt. Nos. 1, 7.  On March 22, 2021, Defendants moved for

summary judgment on the remaining two claims, arguing that they should be dismissed because

Plaintiff failed to exhaust administrative remedies prior to commencing this action.  _See_ Dkt. No.

17.  Following Plaintiff's response in opposition to the motion and Defendants' reply, Magistrate Judge Andrew T. Baxter issued a Report-Recommendation on June 15, 2021, which recommended that Defendants' motion be denied.  *See* Dkt. No. 27.  On July 8, 2021, Defendants filed an objection to Magistrate Judge Baxter's Report-Recommendation.  *See* Dkt. No. 30. Presently before this Court is Defendants' motion for summary judgment.  Dkt. No. 17.  As set forth below, this Court adopts Magistrate Judge Baxter's Report-Recommendation and denies Defendants' motion for summary judgment.

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Chambers*, 43 F.3d at 36-37 (quotation and other citation omitted).  It must be apparent that no rational finder of fact could find in favor

of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Further, "[i]f the party opposing summary judgment is proceeding *pro se*, the court must read his opposition papers 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Rodriguez v. C.O. Reppert*, No. 14-CV-671, 2016 WL 11483439, *2 (W.D.N.Y. Sept. 28, 2016) (quoting *Morrison v. Parmele*, 892 F. Supp. 2d 485, 487 (W.D.N.Y. 2012)). "This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment." *Govan*, 289 F. Supp. 2d at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, *1 (S.D.N.Y. May 16, 2001)). Specifically, "a pro se party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

Defendants argue that they are entitled to summary judgment because Plaintiff failed to fully exhaust administrative remedies available to him prior to commencing this action. *See* Dkt. Nos. 17, 26, 30. The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. § 1997e(a), requires an

inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675. The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See, e.g.*, *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted). The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford*, 548 U.S. at 90-103.

As Magistrate Judge Baxter correctly pointed out, until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether the defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special

circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*
However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure
to exhaust because of "special circumstances." *Ross v. Blake* 578 U.S. 632, 639-40 (2016).
"'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes,
foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 Fed. Appx. 577, 580 (2d Cir. 2016)
(quoting *Ross*, 578 U.S. at 639). Although *Ross* removed the judicial discretion of the "special
circumstances" exception, the other two factors in *Hemphill* of availability and estoppel remain
relevant. Courts evaluating whether an inmate has exhausted his or her administrative remedies
must focus on whether those remedies were "available" to the inmate. *Id.*; *see also Riles*, 656
Fed. Appx. at 580.

     The Supreme Court in *Ross* stated that an administrative procedure in "unavailable" when
(1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide
any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking,
incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a
grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at
643-44. If prison administrators "thwart" inmates from taking advantage of the grievance process
through "machination, misrepresentation, or intimidation," the administrative remedies are
"unavailable," and the inmate is excused from the exhaustion requirement, regardless of which
"official" prevented the inmate from filing the grievance. *Id.* at 644. Where an inmate plausibly
alleges that his failure to file a grievance was due to threats of physical harm by facility staff,
there exists a material question of fact as to whether the defendant officers may rely upon the
inmate's non-exhaustion as an affirmative defense. *See, e.g.*, *Hemphill*, 380 F.3d at 688
(remanding for determination of availability of administrative remedies where an officer

threatened to retaliate against the plaintiff if he filed a complaint); *Adams v. O'Hara*, No. 9:16-CV-527, 2018 WL 5728040, *6-7 (N.D.N.Y. July 24, 2018); *Morrison v. Hartman*, No. 07-CV-6633L, 2010 WL 811319, *3 (W.D.N.Y. Mar. 3, 2010); *Lunney v. Brureton*, No. 04 CIV 2438, 2007 WL 1544629, *9 (S.D.N.Y. May 29, 2007) (collecting cases).

Defendants correctly point out that a "'generalized fear of retaliation,' … is not sufficient to excuse the failure [of an inmate] to exhaust his administrative remedies." *Grant v. Kopp*, No. 17-CV-1224, 2019 WL 368378, *7 (N.D.N.Y. Jan. 3, 2019) (quoting *Bookman v. Lindstrand*, No. 15-CV-1542, 2018 WL 3121688, *10–11 (N.D.N.Y. Feb. 14, 2018)).  However, Plaintiff alleges reasonably specific allegations that he was threatened and assaulted because of his prior filing of a grievance, which was ripped up before him, and his failure to keep his "mouth shut".

Defendants rely primarily on three cases (*McNab*, *Pridgen* and *Grant*) to support their contention that Plaintiff's fear was merely a generalized fear of retaliation and thus not sufficient to excuse his failure to exhaust.  *See* Dkt. No. 30.  However, the facts of *McNab*, *Pridgen* and *Grant* are distinguishable to those alleged in the present case.[1]  In *McNab*, the court held that the plaintiff failed to exhaust his administrative remedies, noting that he failed to appeal the denial of his informal grievance in accordance with the applicable procedural rules.  *McNab v. Doe*, 686 Fed. Appx. 49, 51 (2d Cir. 2017).  Defendants cite the portion of the opinion that concludes that "none of the actions allegedly taken by the defendants actually prevented [plaintiff] from submitting his complaint letter[,]" but fail to recognize the significance of this.  *Id*.  In *McNab*, the plaintiff reported the grievance in a "letter of complaint" received by Deputy Superintendent for Security Services Robert I. Morton, which was followed by an investigation, and follow-up letters

---

[1]Evidence and all reasonable inferences are construed in Plaintiff's favor as the non-moving party. *See, e.g.*, *Sotomayor v. City of New York*, 713 F.3d 163, 164 (2d Cir. 2013).

to the Inspector General and other officials, but the plaintiff never initiated a formal grievance under the grievance process. *McNab v. New York*, No. 12-CV-26, 2015 WL 13744629, *7 (N.D.N.Y. Dec. 7, 2015). Furthermore, the plaintiff affirmatively stated that the officers' behavior designed to "harass and intimidate him" would not "stop plaintiff from going further" with his grievance. *Id.* at *2. From this, it is clear that the plaintiff in *McNab* was not so intimidated as to have the grievance process "unavailable" to him since he did complain to officials in the facility without fear of retaliation, but he simply failed to file a formal grievance.

In *Pridgen*, the plaintiff alleged he was assaulted, threatened, placed in the Special Housing Unit ("SHU") for eleven days, and "heard" officers "ripping up" the "grievance paper" he had given to the officers to file. *Pridgen v. Beatie*, No. 16-CV-535, 2018 WL 1402049, *2 (N.D.N.Y. Jan. 17, 2018). After being released from the SHU, the plaintiff was transferred to another correctional facility where he remained for eighteen months, where he could have timely filed a grievance but failed to do so because he said that other inmates told him he would suffer retaliation from other officers if he did. *Id*. The plaintiff in that case did not indicate that the officers at the new facility intimidated him into not filing a grievance. *Id*. In the instant case, Plaintiff was also transferred to another facility after being released from the SHU; however, as Magistrate Judge Baxter points out, the transfer was well after the time to pursue administrative remedies had elapsed. *See* Dkt. No. 27. Furthermore, as the court in *Hunter* noted while distinguishing the facts in that case, the plaintiff in *Pridgen* did attempt to file a grievance and his "contention that the grievance process was unavailable to him because of this fear of retaliation was 'belied by his conduct after the incident.'" *Hunter v. Rouse*, No. 20-CV-65, 2020 WL 8474744, *4 (N.D.N.Y. Sept. 17, 2020) (quoting *Pridgen*, 2018 WL 1402049, at *8).

Defendants also cite to *Grant* in support of their position.  As with *McNab* above, however, the plaintiff in *Grant* was not deterred from filing a grievance by alleged conduct of the officers involved.  *Grant*, 2019 WL 368378, at *2 (holding that "[a]lthough plaintiff testified that a prison official told him on one occasion to 'leave it alone' and that papers in his cell were either missing or in disarray at some unspecified point, the absence of any specific, affirmative threats of retaliation—particularly when these generalized threats did not actually prevent[ ] plaintiff from successfully utilizing the grievance procedure—leads [the court] to conclude that plaintiff has failed to meet his burden of production with respect to unavailability").

Alleged threats and violence are sufficient to excuse the failure to exhaust administrative remedies when they are "such that a person of ordinary firmness would be deterred from using the facility's internal grievance process."  *Hepworth v. Suffolk Cty.*, No. 2:02-CV-6473, 2006 WL 2844408, *5-6 (E.D.N.Y. Sept. 29, 2006); *see also Hunter*, 2020 WL 8474744, at *3-4.  The court in *Hunter* held that a statement to the plaintiff that if he told "anyone what happened, the next time [the plaintiff] won't walk away" was a sufficiently specific threat of retaliation to excuse the plaintiff from failing to exhaust his administrative remedies.  *Hunter*, 2020 WL 8474744, at *4.  Similarly, in the instant case, Plaintiff alleges that one of the officers said "you like writing grievances" prior to an assault and one told him "you should've kept your mouth shut n----r you wouldn't be going [through] this" while Plaintiff was being assaulted.  Dkt. No. 25 at ¶ 8; *see also* Dkt. Nos. 22, 27.  This experience would "deter a prisoner of 'ordinary firmness' from filing an internal grievance," and Plaintiff implies it did actually deter him from filing a grievance while in the SHU at Upstate Correctional Facility.  *See* Dkt. Nos. 22, 25; *see also Hemphill*, 380 F.3d at 689.

Having reviewed Magistrate Judge Baxter's June 15, 2021, Report-Recommendation, the record, and the applicable law, the Court concludes that Magistrate Judge Baxter correctly recommended that the Court should deny Defendants' motion for summary judgment.

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Baxter's Report-Recommendation (Dkt. No. 27) is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 17) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 25, 2021
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

9