# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

CLIVE DECOLINES,

                                       Plaintiff,

                                                                                        9:20-CV-1502

          v.                                                                              (MAD/ATB)

D. HOLLENBECK, et al.,

                                       Defendants.

---

CLIVE DECOLINES, Plaintiff, pro se
BRENDA T. BADDAM, Asst. Attorney General, for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

Plaintiff brought this civil rights action asserting various constitutional claims arising from his confinement at Upstate Correctional Facility ("Upstate"). (Dkt. No. 1). Presently before the court is defendants' second motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 41-1), which was referred to me for Report and Recommendation by United States District Judge Mae A. D'Agostino.

## I.    Procedural History

Plaintiff filed the complaint on November 30, 2020. (Dkt. No. 1). On January 6, 2021, Judge D'Agostino determined, pursuant to her initial review of the complaint, that plaintiff's First Amendment retaliation and Eighth Amendment excessive force claims as asserted against D. Hollenbeck, DA Hallock, JH Anctil, BJ Alvoie, and KD St. Mary could proceed to litigation. (*See* Dkt. No. 7). On March 7, 2022, plaintiff's First Amendment retaliation claim was discontinued pursuant to stipulation by both

parties. (Dkt. Nos. 38, 39).

On March 22, 2021, defendants filed a pre-discovery motion for summary judgment, seeking dismissal of plaintiff's remaining Eighth Amendment claims due to plaintiff's purported failure to exhaust his administrative remedies. (Dkt. No. 17). On June 15, 2021, I recommended denying defendants' summary judgment motion because there was a genuine issue of fact concerning whether administrative remedies were available to plaintiff. (Dkt. No. 27). On October 25, 2021, Judge D'Agostino adopted my recommendation in full. (Dkt. No. 31).

On June 30, 2022, defendants filed the instant motion for summary judgment seeking the dismissal of the complaint in its entirety, based again, in part, on the fact that plaintiff failed to exhaust his administrative remedies. (Dkt. No. 41). On July 18, 2022, plaintiff filed a brief letter in response to the summary judgment motion (Dkt. No. 43), but failed to address defendants' statement of material fact ("SOMF") (Dkt. No. 41-3). Defendants argue that they should be allowed to file a successive motion for summary judgment because "[t]he arguments contained within this motion could not have been raised in Plaintiff's [sic] first motion for summary judgment and only became apparent after Plaintiff's disclosure during his deposition." (Def.s' Br. at 6-8, Dkt. No. 41-1). For the reasons set forth below, this court will recommend granting defendants' summary judgment motion and dismissing the complaint in its entirety.

## II. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a

2

matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

Local Rules of the Northern District of New York require that a motion for summary judgment be accompanied by a statement of material facts which sets forth, in numbered paragraphs, "a short and concise statement of each material fact about which

the moving party contends there exists no genuine issue." Local Rule 56.1(a).[1] The same rule requires the opposing party to file a response to the moving party's statement of material facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issues arise. Local Rule 56.1(b). The rule specifically provides that "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id*. However, where "the party opposing summary judgment is proceeding pro se, the [c]ourt must read his opposition papers 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Rodriguez v. Reppert*, No. 14-CV-671, 2016 WL 11483439, at *2 (W.D.N.Y. Sept. 28, 2016) (quoting *Morrison v. Parmele*, 892 F. Supp. 2d 485, 487 (W.D.N.Y. 2012)); *Cucchiara v. Dumont*, No. 9:18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *3 (N.D.N.Y. Apr. 26, 2019), *report and recommendation adopted*, 2019 WL 2514234 (N.D.N.Y. June 18, 2019) ("Although the defendant argues, and the Local Rules provide, that the Court shall deem admitted any facts the nonmoving party fails to 'specifically controvert,' pro se plaintiffs are afforded special solicitude in this District and within the Second Circuit.").

Credibility assessments and the choice between conflicting versions of a story are generally for a jury to resolve. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). However, the Second Circuit recognized an exception to this rule in *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005). In *Jeffreys*, the court held that summary

---

[1] Previously Local Rule 7.1(a)(3).

4

judgment may be granted in the rare case, "where there is nothing in the record to support the plaintiff's allegations, aside from his own contradictory and incomplete testimony, and even after drawing all inferences in the light most favorable to the plaintiff, the court determines that 'no reasonable person' could credit . . . his testimony." *Quick v. Quinn*, No. 9:12-CV-1529 (DNH/DEP), 2014 WL 4627106, at *4 (N.D.N.Y. Sept. 11, 2014) (quoting *Jeffreys*, 426 F.3d at 554-55).

In order for the court to apply the *Jeffreys* exception, the defendant must satisfy each of the following: (1) "the plaintiff must rely 'almost exclusively on his own testimony,'" (2) the plaintiff's "testimony must be 'contradictory or incomplete,'" and (3) "the plaintiff's testimony must be contradicted by evidence produced by the defense." *Id.* (quoting *Benitez v. Ham*, No. 04-CV-1159 (NAM/GHL), 2009 WL 3486379, at *20-21 (N.D.N.Y. Oct. 21, 2009) (*adopting report and recommendation*) (quoting *Jeffreys*, 426 F.3d at 554)).

## II.    Relevant Facts and Contentions

At all times relevant to the complaint, plaintiff was an inmate under the jurisdiction of the New York State Department of Corrections and Community Supervision ("DOCCS"). Specifically, plaintiff was housed at Upstate in a Special Housing Unit ("SHU") from October 12, 2019 through July 21, 2020, when he was transferred to the Coxsackie Correctional Facility ("Coxsackie"). (Dkt. No. 17-5).

The complaint alleges that, on February 17, 2020 at 8:25 a.m., Correction Officers ("C.O.") D. Hollenbeck and DA Hallock escorted the plaintiff, in mechanical restraints, to his cell. (Dkt. No. 1-1 at 1). Plaintiff contends that upon arriving to his

5

cell, an unnamed officer stated "you like writing grievances," ripped up a grievance plaintiff had previously filed in January 2020, and then entered the cell and assaulted plaintiff. (*Id.*). While plaintiff was on the floor, still restrained, C.O. Hollenbeck, C.O. Hallock, and another unnamed officer joined the assault. (*Id.*).

Plaintiff further alleges that on February 17, 2020 at 11:00 a.m., defendants C.O. Hollenbeck, C.O. Hallock, Lieutenant ("Lt.") Anctil, C.O. LaVoie, and C.O. St. Mary assaulted him while he was being escorted from the recreational area. (*Id.*). One of the defendants allegedly said: "You should've kept your mouth shut n----r you wouldn't be going through this." (*Id.*).

Defendants maintain that plaintiff failed to exhaust his administrative remedies with respect to the two alleged incidents of assault.[2] (Dkt. No. 41-1 at 8-15). In support of their assertion, defendants have submitted a sworn declaration from Rachel Sequin, the Assistant Director of the Incarcerated Grievance Program ("IGP")[3] for DOCCS, and Sherri Debyah, the IGP Supervisor at Upstate. (Dkt. 17-4, 17-5). Both officials contend that, at the time of the alleged incident and at all times relevant, Upstate had, and continues to have, a fully functioning grievance program available to incarcerated individuals to raise complaints. (*Id.*). Based on Supervisor Debyah's review of Upstate's records, she maintains that plaintiff did not file any grievances concerning his

---

[2] While this motion is challenging the Eighth Amendment claim only on procedural grounds, the court notes defendants have not conceded that the assaults occurred. (Dkt. No. 32).

[3] The program was formerly known as the "Inmate Grievance Program," but has recently been renamed. Any references made in the record to the Inmate Grievance Program are referring to the Incarcerated Grievance Program.

6

allegations against the defendants. (Debyah Decl. ¶ 21). Assistant Director Sequin additionally maintains, based on her review of records of the DOCCS Central Office Review Committee ("CORC"), that plaintiff did not appeal the denial of any facility-level grievance determinations to CORC concerning the allegations against the defendants. (Seguin Decl. ¶ 15).

Plaintiff does not dispute that he has not completed the grievance process for the claims in his complaint. In his original sworn complaint and his response to plaintiff's first summary judgment motion, plaintiff specifically alleged that he was threatened and assaulted at Upstate on February 17, 2020, for previously filing a grievance, in January of that year. (Dkt. No. 1-1 at 1-2; Dkt. No. 22 at 3-4). Specifically, plaintiff claimed that a prison guard ripped up the prior grievance in front of plaintiff and then a group of guards assaulted him. (*Id.*). Based on plaintiff's allegations, this court denied defendant's first motion for summary judgment because there was a genuine issue over whether administrative remedies were available to plaintiff. (Dkt. No. 27).

However, during his February 3, 2022 deposition, which took place after defendants' first summary judgment motion was decided, plaintiff admitted that he had never actually been assaulted for, or prevented from, filing a grievance at Upstate. (Pl.'s Deposition at 10, 37-38, Dkt. No. at 13, 40-41). When asked why he made these false allegations, plaintiff stated "Well, you could say I was trying to leave – lead up to the truth." (Pl.'s Deposition at 37-38). He further testified he was scared of writing a grievance because he "was in fear for [his] life, or in danger of [his] life" and because the prison guards, medical staff, and superintendent all work together. (*Id*. at 73-74).

7

In his response to this motion for summary judgment, plaintiff reiterated that he falsified his statement about the a correction officer ripping up a prior grievance. (Dkt. No. 43 at 1).

### III.    Exhaustion of Administrative Remedies

####    A.    Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) (citing *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999)). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g.*, *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford*

*v. Ngo*, 548 U.S. 81, 88 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford*, 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Incarcerated[4] Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d). The court also notes that the regulations governing the Incarcerated Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (I), 701.5.

Prior to the Supreme Court's 2016 decision in *Ross v. Blake*, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his

---

[4] This committee was formerly known as the "Inmate Grievance Resolution Committee," but has recently been renamed. Any references made in the record to the Inmate Grievance Resolution Committee are referring to the Incarcerated Grievance Resolution Committee.

9

administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The "*Hemphill*" inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

In *Ross*, the Supreme Court made it clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 578 U.S. 632, 640 (2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, 578 U.S. at 639).

Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, 578 U.S. at 642. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.*; *see also Riles*, 2016 WL 4572321 at *2. An administrative procedure is "unavailable" when

> (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process

10

>through machination, misrepresentation, or intimidation."

*Ross*, 578 U.S. at 643-44.

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Id.* The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 643. The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.* at 643-44. Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.*

### B. Analysis

If prison administrators "thwart" inmates from taking advantage of the grievance process through "machination, misrepresentation, or intimidation," the administrative remedies are "unavailable," and the inmate is excused from the exhaustion requirement, regardless of which "official" prevented plaintiff from filing the grievance. *Ross*, 578 U.S. at 644. Consistent with this approach, courts in the Second Circuit have concluded, both before and after *Ross*, that where an inmate plausibly alleges that his failure to file a grievance was due to threats of physical harm by facility staff, there exists a material question of fact as to whether the defendant officers may rely upon the inmate's non-exhaustion as an affirmative defense. *See, e.g.*, *Hemphill*, 380 F.3d at 688 (remanding for determination of availability of administrative remedies where officer

11

threatened to retaliate against the plaintiff if he filed a complaint); *Adams v. O'Hara*, No. 9:16-CV-527 (GTS/ATB), 2018 WL 5728040, at *6-7 (N.D.N.Y. July 24, 2018), *report and recommendation adopted*, 2018 WL 4590015 (N.D.N.Y. Sept. 25, 2018); *Morrison v. Hartman*, No. 07-CV-6633L, 2010 WL 811319, *3 (W.D.N.Y. Mar. 3, 2010); *Lunney v. Brureton*, No. 04 Civ. 2438, 2007 WL 1544629, at *9 (S.D.N.Y. May 29, 2007) (collecting cases).[5]

Applying the *Jeffreys* exception, plaintiff's inconsistent, if not fabricated, allegations of unavailability in this case fail to raise a genuine issue of material fact sufficient to defeat the defendants' current motion for summary judgment. First, plaintiff is solely relying on his own testimony to show administrative remedies were not "available" to him, based on his claims of intimidation and assault by the defendants and other officers at Upstate. (Dkt. Nos. 1, 1-1, 1-2). Plaintiff has not provided the court with any other evidence to support his allegation that administrative remedies were unavailable, despite opposing counsel giving plaintiff an opportunity to put anything on the record at the end of his deposition. (Pl.'s Deposition at 77-78). Second, plaintiff has directly contradicted himself and openly admitted he falsified the account of a guard ripping up a prior grievance. (*Id*. at 10, 37-38; 43 at 1). In the same deposition, he also admitted to lying in another section of the complaint, testifying that

---

[5] As noted above, although *Ross* modified the factors relevant to the "availability" of administrative remedies, it essentially maintained the principle established in *Hemphill* that a failure to exhaust may be excused when prison administrators thwart inmates from taking advantage of a grievance process through, e.g., intimidation. Accordingly, case authority from this circuit that pre-dates *Ross* will still be instructive to the extent it discusses the impact of intimidation of prisoners on the availability of the grievance process.

he was actually only punched once, while his complaint stated that he was punched various times. (*Id*. at 57). Defendants have highlighted other portions of plaintiff's deposition where he admitted to falsifying his prior account. (Def.s' Br. at 3-4).

The plaintiff's general, unsupported allegations during his deposition that he "was in fear for [his] life, or in danger of [his] life" (Pl.'s Deposition at 73-74) do not satisfy the legal threshold for unavailability. *Pridgen v. Beatie*, No. 9:16-CV-535 (DNH/CFH), 2018 WL 1402049, at *8 (N.D.N.Y. Jan. 17, 2018), *report and recommendation adopted*, 2018 WL 1394146 (N.D.N.Y. Mar. 19, 2018) (citing *Salmon v. Bellinger*, No. 9:14-CV-827 (LEK/DJS), 2016 WL 4411338, at *5 (N.D.N.Y. July 5, 2016)) ("However, a generalized fear of retaliation is insufficient to overcome a failure to exhaust administrative remedies." ). The Second Circuit has reaffirmed that "where there has been no affirmative action by prison staff actually preventing prisoners from pursuing administrative remedies, then those remedies are not unavailable." *Grafton v. Hesse*, 783 F. App'x 29, 31 (2d Cir 2019) (citing *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 178 (2d Cir. 2006)). Thus, the court recommends dismissal of plaintiff's complaint, due to plaintiff's failure to exhaust administrative remedies that were available to him.[6]

---

[6] The court recognizes that an inmate-plaintiff's ability to process his grievances are curtailed to some extent while confined to the SHU. *See Rodriguez v. Cross*, No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) ("Inmates not housed in the SHU are in a different position to SHU inmates when determining if grievance procedures are 'essentially unknowable' or unavailable.") (citation omitted). However, plaintiff testified that he was planning on writing a grievance one month before the alleged assaults occurred, for an issue with the toilet in his cell, but was moved to a different cell with a working toilet and never tried to file the grievance. (Pl.'s Deposition at 72). This corroborates that the grievance program was available to plaintiff, despite his confinement in the SHU at Upstate, at around the time of the

## IV. **Personal Involvement**

This court is already recommending dismissal of the complaint in its entirety, based on plaintiff's failure to exhaust his administrative remedies. For the following reasons, this court further recommends dismissal of the claims against Lt. Anctil and C.O. Hallock, due to their lack of personal involvement in the alleged incidents of assault.

### A. **Legal Standards**

It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit articulated standards for courts to use when determining personal involvement or supervisory liability.

However after the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), the factors articulated in Colon were called into question. District courts, including the Northern District of New York[7] noted the possibility that the Colon factors were no longer viable. Eventually, the Second Circuit revised its standard for determining personal involvement or supervisory liability, finding that the Colon factors are no longer controlling and articulating the proper standard for the

---

relevant incidents on February 17, 2020.

[7] *See, e.g.*, *Vance v. State of New York*, No. 9:18-CV-748 (BKS/ATB), 2020 WL 7481585, at *3 & n.3 (N.D.N.Y. Nov. 30, 2020) (discussing cases), *report and recommendation adopted*, 2020 WL 7480955 (N.D.N.Y. Dec. 18, 2020).

courts in this circuit to utilize. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 676, 129 S. Ct. 1937).

Joining other circuits, the Second Circuit held that, after *Iqbal*, there is no "special" rule for supervisory liability. *Id.*

> Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676, 129 S. Ct. 1937. "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id.* The violation must be established against the supervisory official directly.

*Id.* (quoting *Iqbal*, 556 U.S. at 676, 129 S. Ct. 1937). The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. *Id.* Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id.*

### B. Analysis

#### 1. James Anctil

Plaintiff alleges that on February 17, 2020 at 11:00 a.m., Lt. Anctil extracted him from the recreational pen and escorted him through the 11-A gallery stairwell, where Lt. Anctil participated in the alleged assault. (Dkt. No. 1-1 at 1; Pl.'s Deposition at 44-45). However, in his signed declaration, Lt. Anctil asserts that he was neither working nor physically present at Upstate at the time of either assault alleged by plaintiff, which defense counsel also alleged in the SOMF. (Dkt. No. 41-7 at ¶ 5; Def.s' SOMF ¶¶ 33-37). To support his assertions, Lt. Anctil has provided the Lieutenant Planning Grid,

15

the Bi-Weekly Attendance Record, the Watch Commander logbook, and the Building 11 logbook. (*See generally* Dkt. No. 41-7). The Lieutenant Planning Grid shows Lt. Anctil's shift on the date of the incidents did not start until 2:00 p.m. (Dkt. No. 41-7 at 19). The Bi-Weekly Attendance Record shows Lt. Anctil checked out of Upstate at 6 a.m. and checked back in at 1:45 p.m. (Dkt. No. 41-7 at 17). The Watch Commander logbook shows Lt. Rowe was the watch commander during the time of both incidents. (Dkt. No. 41-7 at 13). The Building 11 logbook further confirms that Lt. Anctil was not working at Upstate at the time of the alleged assaults. (Dkt. No. 41-7).

The overwhelming documentary evidence shows that Lt. Anctil was not at the prison during the time of the incidents, and plaintiff failed to refute this evidence by not responding to defendants' SOMF. Hence, no reasonable fact finder could not conclude that defendant Lt. Anctil participated in the alleged incidents or was in a position to intervene or stop it. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[M]ere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case"), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Rucano v. Annucci*, No. 9:18-CV-218 (GTS/CFH), 2021 WL 3293504, at *19 (N.D.N.Y. May 19, 2021), *report and recommendation adopted*, 2021 WL 3292394 (N.D.N.Y. Aug. 2, 2021) ("[p]laintiff's shifting and conclusory assertions to the contrary fail to raise a genuine issue of material fact" as to his claim "and are insufficient to overcome defendants' documentary case"). Accordingly, the complaint should be dismissed as against Lt. Anctil for lack of personal involvement.

### 2. Debbie Hallock

Plaintiff alleges that C.O. Hallock was on his right side during the 11:00 a.m. assault on February 17, 2020, and hit plaintiff three to five times with a baton. (Pl.'s Deposition at 34-35). At his deposition, plaintiff described C.O. Hallock as a male, or male presenting individual, approximately 5'8" in height, with brownish hair, and a shaven face. (Pl.'s Deposition at 31). However, C.O. Hallock is a female and female presenting individual, 5'3" in height, with short, blonde hair. (Dkt. No. 41-5, ¶¶ 9, 10, 11).

C.O. Hallock disputes that she was involved in any physical altercation with plaintiff on February 17, 2020, and that is also asserted in defendants' SOMF, to which plaintiff did not respond. (*See* SOMF ¶¶ 38-41). In a sworn affidavit submitted in support of defendants' motion, C.O. Hallock alleges that she was working as a tier III ticket server on that day, and has provided the court a copy of the relevant staff planning grid, showing her assignment. (Dkt. No. 41-5 at 2, 8). She further explains that tier servers "do not participate in any use of force incidents, participate in cell extractions, escort individuals, or carry a baton." (Dkt. No. 41-5 at ¶ 15). C.O. Hallock specifically asserts that she had no contact with the plaintiff on the date of the incidents and was not physically present in the building where the incidents occurred. (Dkt. No. 41-5 at ¶¶ 17, 22). She has also provided a copy of the Building 11 logbook for February 17, 2020, which does not include her name. (Dkt. No. 41-5 at 10-14).

Based on the overwhelming amount of documentary evidence showing that C.O. Hallock was not in the same building where the alleged assaults occurred, and plaintiff's

17

patently inaccurate description of C.O. Hallock, a reasonable fact finder could not find that defendant C.O. Hallock participated in the alleged assaults. Accordingly, the complaint should be dismissed against C.O. Hallock due to her lack of personal involvement in the alleged assaults.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that for the reasons set forth in this Report-Recommendation, defendants' motion for summary judgment (Dkt. No. 41) be **GRANTED**, and the plaintiff's complaint be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y. of Health & Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 13, 2023

                                                 Andrew T. Baxter
                                                 U.S. Magistrate Judge